Robert Mackey (SBN 125961)
bobmackeyesq@aol.com
**LAW OFFICES OF ROBERT MACKEY**
16320 Murphy Road
Sonora, CA 95370
Tel: (412) 370-9110

**MIGLIACCIO & RATHOD LLP**
Jane Manwarring, Esq. (*pro hac vice* anticipated)
412 H Street N.E., Suite 302
Washington, D.C. 20002
Tel: (202) 470-3520
jmanwarring@classlawdc.com

Attorneys for Plaintiffs and Proposed Class

**UNITED STATES DISTRICT COURT FOR THE**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| STEVE BRAND, KYLE HULBERT, and KAROLINA HULBERT, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UTZ BRANDS, INC.,<br><br>Defendant. | **Case No:**<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiffs Steve Brand, Kyle Hulbert, and Karolina Hulbert, individually and on behalf of all others similarly situated and the general public of the state of California, by and through undersigned counsel, bringing this Class Action Complaint against Defendant Utz Brands, Inc. (hereinafter "Defendant" or "Utz") for deceptive nutrition labeling practices. Plaintiffs allege violations of California's False Advertising Law (Cal. Bus. & Prof. Code §§ 17500, et seq.), Consumer Legal Remedies Act ("CLRA") (Cal. Civ. Code §§ 1750-1785), Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200-17210), and also bring claims for breach of express warranty, breach of implied warranty of merchantability, common law fraud, and unjust enrichment. The following

allegations are based upon information and belief, including personal knowledge, and upon investigation conducted by counsel:

## SUMMARY OF THE ACTION

1. This action arises from Defendant's deceptive trade practices in the manufacture and sale of Boulder Canyon potato chips marketed and labeled as cooked in avocado oil, including Boulder Canyon Avocado Oil Classic Sea Salt Potato Chips, Wavy Cheddar & Sour Cream, Hickory BBQ, and Cheddar & Sour Cream varieties (collectively, the "Products"). Defendant prominently markets the Products as using avocado oil rather than refined seed oils.

2. The labeling and ingredient representations for the Products identify avocado oil as the oil used to cook the chips and do not disclose that the Products may contain other, cheaper oils.

3. Despite those representations, recent testing from the University of California, Davis ("UC Davis") indicates that Boulder Canyon Avocado Oil Classic Sea Salt Potato Chips are inconsistent with a product containing only avocado oil. The study, published in the July 2026 edition of Applied Food Research, reported that the tested product, along with numerous other tested products, showed evidence of oils that many consumers of avocado-oil products intentionally pay more to avoid.1

4. Researchers tested a sample of Boulder Canyon Avocado Oil Classic Sea Salt Potato Chips and found that its fatty-acid and sterol composition was not consistent with a product containing only avocado oil. The study did not test the flavored varieties purchased by Plaintiff Hulbert, but its findings raise concerns regarding Defendant's avocado-oil representations across Boulder Canyon products marketed as cooked in avocado oil.

5. Had Plaintiffs and Class members known that the Products contained other oils, they would not have purchased the Products or would have paid substantially less for them.

6. Despite knowing or having reason to know that its representations were inaccurate, Defendant continued to sell the Products with misleading labels. Defendant concealed and omitted the

true oil content from consumers who purchased the Products to obtain avocado-oil products and avoid refined seed oils.

7. Plaintiffs do not seek to impose requirements greater than those required by federal regulations. Plaintiffs' claims do not seek to expand upon or call for stricter standards than the labeling or marketing requirements established by federal regulations.

8. Plaintiff Brand's CLRA notice letter was delivered to Defendant via certified mail on September 16, 2026. The notice informed Defendant of the claims asserted herein under the CLRA and demanded a class-wide cure within the applicable statutory periods. If Defendant does not provide the requested class-wide relief, Plaintiff Brand will seek leave to amend this Complaint to add claims for statutory damages under the CLRA when permitted.

## JURISDICTION

9. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act. Specifically, at least one member of the proposed Class is a citizen of a different state from Defendant, the number of proposed Class members exceeds 100, and the aggregate amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2)(A).

10. This Court has personal jurisdiction over Defendant because Defendant has sufficient minimum contacts with California and with the Northern District of California to establish Defendant's presence in California. Defendant transacts business in California, advertises and markets its products in California, disseminates the afore-described representations and deceptions throughout the state of California, and derives a substantial income from the sale of products in California giving rise to personal jurisdiction.

11. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because Defendant is subject to personal jurisdiction in California and a substantial part of the events or omissions giving rise to the claims occurred in this District, including Plaintiffs Kyle Hulbert's and Karolina Hulbert's purchases of the Products in Rohnert Park and Cotati, Sonoma County, California. Defendant distributes the

Products in this District, receives substantial revenue from its sale here, and made or disseminated the challenged representations and omissions here.

12. **Divisional Assignment.** This action is properly assigned to the San Francisco or Oakland Division under Civil L.R. 3-2(d) because a substantial part of the events giving rise to Plaintiffs' claims occurred in Sonoma County, where Plaintiffs Kyle Hulbert and Karolina Hulbert purchased the Products in Rohnert Park and Cotati, California.

## PARTIES

13. Plaintiff Steve Brand is an adult resident of California and a consumer who resides in Huntington Beach. On August 13, 2026, Plaintiff Brand purchased Boulder Canyon Avocado Oil Classic Sea Salt Potato Chips for $1.99 from Sprouts Farmers Market in Huntington Beach, California. Plaintiff had purchased Boulder Canyon avocado-oil chips from Sprouts on prior occasions. The representation that the Product contained no oils other than avocado oil was material to Plaintiff, who relied on the Product's packaging and ingredient label. Had Plaintiff known that the Product contained other oils, he would not have purchased it or would have paid substantially less for it.

14. Plaintiff Kyle Hulbert is an adult resident of California who resides in Rohnert Park, Sonoma County. Between April 18 and September 13, 2026, Plaintiff Hulbert purchased nineteen bags of Boulder Canyon chips marketed as cooked in avocado oil from Safeway in Rohnert Park and Oliver's Market in Cotati, California. His documented purchases consisted of thirteen bags of Wavy Cheddar & Sour Cream, four bags of Hickory BBQ, and two bags of Cheddar & Sour Cream, for a total of $76.87. Plaintiff Hulbert retained seven Safeway digital receipt records and an Oliver's Market purchase-history report documenting those purchases. Defendant's representations that the Products were cooked in avocado oil were material to Plaintiff Hulbert. Had he known that the Products were not made exclusively with avocado oil, he would not have purchased them or would have paid substantially less for them.

15. Plaintiff Karolina Hulbert is an adult resident of California who resides in Rohnert Park, Sonoma County. Plaintiff Karolina Hulbert separately purchased Boulder Canyon chips on her own

card from Safeway in Rohnert Park and Oliver's Market in Cotati, California. Her documented purchases include eighteen bags purchased between April 7 and September 27, 2026, for a total of $71.67: eight bags from Safeway totaling $35.82 and ten bags from Oliver's Market totaling $35.85. The varieties included Wavy Cheddar Sour Cream, Cheddar & Sour Cream, Wavy Sea Salt, Avocado Oil Sea Salt & Cracked Pepper, Avocado Oil Sea Salt, Spicy Green Chili, Hickory BBQ, and Honey Hot. She provided Safeway digital receipts, an Oliver's Market purchase-history report, and paper receipts documenting her purchases. Defendant's representations that the Products were cooked in avocado oil were material to Plaintiff Karolina Hulbert. Had she known that the Products were not made exclusively with avocado oil, she would not have purchased them or would have paid substantially less for them.

16. Defendant Utz Brands, Inc. is a corporation incorporated under the laws of the State of Delaware, with its principal office in Hanover, Pennsylvania.

17. Defendant makes and distributes snacking and savory convenience products throughout the United States, including to consumers in California.

18. Defendant manufactures, markets, and distributes the Products defined above and at issue in this case.

**THE SALE OF AVOCADO OIL PRODUCTS**

19. Each of the preceding paragraphs is incorporated by reference herein.

20. Advertisements, packages, and labels should provide consumers with accurate information as to the nature and quality of a product’s contents and should assist in making informed decisions. When a company misrepresents material information about a product, it is deceptive and misleading to reasonable consumers.

21. On Defendant’s website, Defendant markets Boulder Canyon Avocado Oil Classic Sea Salt Potato Chips as a product “crafted with care, using high-quality ingredients” and suited for “Health-Conscious Snackers: Ideal for those looking for a delicious snack made with better-for-you ingredients.” The packaging likewise represents that the chips are made with avocado oil, as shown

below. Prominent on the packaging is the ingredient label, which identifies avocado oil and does not identify another cooking oil.

22. Consumers rely upon these representations when choosing brands of potato chips to purchase. For instance, numerous reviews on partner sites such as Amazon highlight the healthful nature of avocado oil as compared to refined seed oils.


Michael Gerardi
**Wow chips**
Reviewed in the United States on August 10, 2026
Flavor Name: Sea Salt | Size: 6 Ounce (Pack of 1) | Verified Purchase
Wow!! A 'healthier' chip made without palm oil, but avocado oil. Delicious! Just reordered, along w 2 varieties! Oh, very reasonably priced (for now??)
One person found this helpful

**Reviews on Amazon:**

41 customers mention "Healthiness" 37 positive 4 negative ✕

Customers find these potato chips to be a healthier alternative, noting they are made with healthier oils and are great for snacking. One customer mentions they are better for you when not so greasy.

"...are delicious but kind of expensive six bags small bags, but they're **healthy** and taste delicious I will buy them again, but I will try to find a..." Read more ›

"...My extended family love these chips. Just a few ingredients. **Healthy chips**. I bought the 10 pack .... these chips are healthy!" Read more ›

"**Healthier chip option** if you're avoiding seed oils. Taste is very good." Read more ›

"Good good and **good for you**." Read more ›

23. Defendant's Product packaging is clearly intended to appeal to consumers who value products made with avocado oil in lieu of refined seed oils. The back of each bag contains a large, highly visible textbox stating "WHY AVOCADO OIL?...SO YOU CAN LIVE BETTER BY EATING BOULDER" with a prominent picture of a sliced avocado, as can be seen below.

**<u>Plaintiffs' Product Picture:</u>**



**Defendant's Website Representations:**






24. Reviewers on Defendant's own website routinely mention that they purchase the Products because it purportedly contains only avocado oil

HB Hilda B.
Verified Buyer
I recommend this product

| | |
|---|---|
| Age Range | 25 - 34 |
| Favorite Flavors | Simple, Light, Salty |
| Perfect for... | Eating on it's own |

★★★★★ 5 months ago

Found this rare gem

My son is an adult who suffers from many things He has autism and IDD (part of his SHANK-2 -related syndrome which he is the 10th person to have this so far. He has plasma histamine intolerance. It's difficult to find anything that he can eat..until now. We found potato chips here made with avocado oil!! THAT he can have. We buy these be the carton ans we take some, we send some to the day-hag for him to have, and the house he lives in with two other guys. He is so happy about this. I have cried many happy tears that a company

Read More

Was this helpful? 0 0

CT Carol T.
Verified Buyer
I recommend this product

| | |
|---|---|
| Age Range | Under 18 |
| Favorite Flavors | Salty |

★★★★★ 5 months ago

great choice for those with seed oil allergy

Bought for a kiddo in my life who can't do the standard seed oils. He reports they taste just like potato chips without the usual side effects, and was besides himself with joy.

Was this helpful? 0 0

HA **Humble Abode, I.**
Verified Buyer

I recommend this product

Age Range 55 - 64

★★★★☆ 2 years ago

**Avocado chips**

The Avocado chips are great and much healthier than the ones made with seed oils. Only regret is Boulder Canyon stopped making the party size bags, they need to bring those back.

Was this helpful? 0 0

B **Bill**

I recommend this product

★★★★☆ 8 months ago

**4 Stars**

The chips retain a lot of oil and aren't as light as other brands. But, I believe they are healthier than them.

Verified by shop

Was this helpful? 1 0

GM

**Gia M. H.**
Verified Buyer

I recommend this product

| | |
|---|---|
| Age Range | 55 - 64 |
| Favorite Flavors | Savory |
| Perfect for... | Munchies |

★★★★★ 10 months ago

**Great chips**

Wonderful chips and very healthy snacks

Was this helpful? 1 0

IS

**Ismail S.**
Verified Buyer

I recommend this product

Age Range 65+

Favorite Flavors
Spicy, Salty, Savory, Plain, Sour

Perfect for...

★★★★★ 11 months ago

**The best**

The perfect plain salt potato chip using healthy oil and other ingredients!

Was this helpful? 1 2

25. Indeed, of the 97 reviews of the Products on Defendant's website, approximately one-third make mention of the avocado oil or purported lack of seed oils in the Products.

26. Defendant's sale of the Products deceives reasonable consumers because the packaging and advertising materials represent that the Products are cooked in avocado oil and do not disclose the possible presence of other cooking oils. As discussed herein, testing of Boulder Canyon Avocado Oil Classic Sea Salt Potato Chips found a composition inconsistent with a product containing only avocado oil.

27. Defendant's sale of the Products is deceptive to reasonable consumers, including Plaintiffs, because there is no practical way for consumers to know that the Product contains refined seed oils.

28. As the above comments show, consumers pay a premium for products that are made with avocado oil in lieu of the refined seed oils that are found in most products. For instance, even when bought in a larger quantity, the Boulder Canyon Product on Amazon currently sells for $0.87 per ounce while the Amazon brand chips (made with corn, sunflower, or canola oil) sell for only $0.29 per ounce.[2] This represents a 300% premium that consumers are paying for the product, believing that it contains only avocado oil.

29. Defendant's current Boulder Canyon website continues to make avocado oil and ingredient simplicity central to the brand's marketing. It states that its chips are made with "simple ingredients" and describes the brand as using "premium oils" and "real ingredients." Defendant further markets certain Boulder Canyon chip lines as being "cooked in 100% avocado oil."3

30. Individual product pages likewise describe Boulder Canyon avocado-oil chips as "made

---

[2] https://www.amazon.com/Boulder-Canyon-Avocado-NON-GMO-Verified/dp/B01K1X72O2; https://www.amazon.com/Amazon-Brand-Happy-Salted-Potato/dp/B0H2LYLNYL?th=1

3Utz Quality Foods, Boulder Canyon, https://www.utzsnacks.com/collections/boulder-canyon (last visited Oct. 5, 2026); Utz Quality Foods, Boulder Canyon Kettle Potato Chips Canyon Cut Avocado Oil Sea Salt, https://www.utzsnacks.com/products/boulder-canyon-avocado-oil-canyon-cut-kettle-potato-chips-sea-salt (last visited Oct. 5, 2026).

with premium avocado oil" and "simple ingredients," and promote them for "mindful snacking." The packaging shown on Defendant's website prominently identifies "Avocado Oil" as part of the product name and presentation, reinforcing that the type of cooking oil is a material product attribute.

31. Consumer reviews confirm that purchasers understand and rely on these representations. On Defendant's own product pages, reviewers praise the products because they are cooked in avocado oil, contain simple or natural ingredients, and are perceived as a better alternative to conventional chips. One verified purchaser expressly attributes the product's appeal to being "cooked in avocado oil," while other reviewers emphasize the short ingredient list and absence of "bad ingredients."

32. These website statements, packaging representations, and consumer reviews are consistent with the representations already alleged above and demonstrate that Defendant affirmatively markets the Products to consumers who value avocado oil and seek to avoid conventional refined seed oils.

**PURCHASES**

33. Each of the preceding paragraphs is incorporated by reference herein.

34. On August 13, 2026, Plaintiff Brand purchased Boulder Canyon Avocado Oil Classic Sea Salt Potato Chips for $1.99 from Sprouts Farmers Market in Huntington Beach, California.

35. Between April 18 and September 13, 2026, Plaintiff Kyle Hulbert purchased nineteen bags of the Products from Safeway in Rohnert Park and Oliver's Market in Cotati, California, paying a total of $76.87.

36. Between April 7 and October 6, 2026, Plaintiff Karolina Hulbert purchased twenty bags of the Products from Safeway in Rohnert Park and Oliver's Market in Cotati, California, paying a total of $79.23.

37. Defendant has sold the Products to the general public in the state of California numerous times.

38. Upon information and belief, Defendant sells its products in the state of California through a number of distributors and retailers to the general public, including through its own website,

Amazon.com, and others.

## CLASS ACTION ALLEGATIONS

39. This action is brought by the named Plaintiffs on his behalf and on behalf of the proposed Class of all other persons similarly situated under Fed. R. Civ. P. 23(b)(2), (b)(3), and/or (c)(4).

40. The Nationwide Class Plaintiffs seek to represent is defined as follows:

**All persons residing in the United States who purchased the Products within the statute of limitations.**

41. Plaintiffs also intend to seek certification of a California Subclass, consisting of:

**All persons residing in the state of California who purchased the Products within the statute of limitations.**

42. Excluded from the proposed Class and Subclass are any claims for personal injury, wrongful death, or other property damage sustained by the Class or Subclass; and any judge conducting any proceeding in this action and members of their immediate families.

43. Plaintiffs reserve the right to amend the definitions of the Class and Subclass if further information and discovery indicate that the definitions of the Class and Subclass should be narrowed, expanded, or otherwise modified.

44. Numerosity. The Class is so numerous that the individual joinder of all members is impracticable. While the exact number of Class members is unknown and such information is in exclusive control of Defendant, Plaintiffs believe that the Class encompasses hundreds of thousands of individuals who are geographically dispersed throughout the nation, therefore, the number of persons who are members of the Class are so numerous that joinder of all members in one action is impracticable.

45. Commonality. Common questions of law or fact arising from Defendant's conduct exist as to all members of the Class, which predominate over any questions affecting only individual Class members. These common questions include, but are not limited to, the following:

a) Whether Defendant knowingly sold the Products with misleading labels;

b) Whether Defendant misrepresented and omitted the ingredients in the Products;

c) Whether Defendant engaged in fraudulent practices as to the Class members;

d) Whether Defendant violated state consumer protection laws by misrepresenting and concealing the ingredients in the Products;

e) Whether Defendant's conduct amounts to violations of the California Consumer Legal Remedies Act ("CLRA");

f) Whether Defendant's conduct amounts to violations of California's False Advertising Law;

g) Whether Defendant's conduct amounts to violations of California's Unfair Competition Law;

h) Whether Defendant deliberately misrepresented and omitted material facts to Plaintiffs and the Class members;

i) Whether members of the Class may be notified and warned about the true contents of the Products and have the entry of final and injunctive relief compelling Defendant to stop its misrepresentations;

j) Whether Plaintiffs and the Class suffered damages because of Defendant's misconduct and, if so, the proper measure of damages; and

k) The nature, scope, and operation of Defendant's wrongful practices.

46. Typicality. Plaintiffs' claims are typical of those of other Class members because Plaintiffs and Class members all purchased the Products.

47. Adequacy. Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class in that Plaintiffs have no disabling conflicts of interest that would be antagonistic to those of the other members of the Class. Plaintiffs seek no relief that is antagonistic or adverse to the members of the Class and the infringement of the rights and the damages Plaintiffs have suffered are typical of other Class members. Plaintiffs have also retained counsel experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously.

48. Predominance. Defendant has engaged in a common course of conduct toward Plaintiffs and Class members because they purchased Products bearing materially similar avocado-oil representations. The common issues arising from Defendant's conduct affecting Class members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

49. Superiority. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class members would likely find that the cost of litigating their individual claim is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

50. Defendant has acted on grounds that apply generally to the Class as a whole so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class-wide basis.

## CAUSES OF ACTION

## COUNT I

### Breach of Express Warranty

**(*On behalf of the Nationwide Class or, alternatively, on behalf of the California Subclass*)**

51. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

52. Plaintiffs bring this claim on behalf of themselves and on behalf of the Class.

53. Defendant is a “merchant” and a “seller” as those terms are defined under the Uniform Commercial Code (U.C.C.) and by the respective state statutes under which Plaintiffs alternatively pleads this claim, inter alia, Cal. Com. Code §§ 2103(1)(d) and 2104(1).

54. Plaintiffs and Class members are “buyers” of “goods” as defined under the U.C.C. and by the respective state statutes under which Plaintiffs alternatively pleads this claim, inter alia, Cal. Com. Code §§ 2103(1)(a) and 2105(1).

55. “Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.” U.C.C. § 2-313(a)(1).[4]

56. Defendant created an express warranty within the meaning of the U.C.C. and the respective state statutes under which Plaintiffs alternatively asserts this claim.

57. Defendant extended express warranties to consumers, including Plaintiffs and the proposed Class, that the Products contain no oil but avocado oil. These promises and representations were extended by way of the product label, product descriptions and representations as to product qualities and characteristics, on its website (and third-party websites), and via advertisements, among other methods as detailed herein. These promises and representations became part of the basis of the bargain between the parties and thus constituted an express warranty.

58. Plaintiffs and Class members reasonably and justifiably relied on Defendant’s express warranty when purchasing the Products.

59. Defendant breached these warranties by selling the Products knowing its claims regarding the lack of refined seed oils were false.

60. As a direct result of this breach, Plaintiffs and the Class did not in fact receive goods as warranted by Defendant.

[4] The California statute adopting these provisions can be found at Cal. Com. Code § 2313.

61. As a proximate result of this breach of warranty by Defendant, Plaintiffs and the Class have suffered damages, injury in fact, and ascertainable loss in an amount to be determined at trial.

## COUNT II

### Breach of Implied Warranty of Merchantability

**(*On behalf of the Nationwide Class or, alternatively, on behalf of the California Subclass*)**

62. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

63. Plaintiffs bring this claim on behalf of themselves and on behalf of the Class.

64. Defendant sold the Products to Class members under implied warranties of merchantability and fitness. Defendant impliedly warranted the Products to be merchantable and fit for the ordinary purposes for which it was intended to be used. Defendant is under a duty to design, manufacture, label, and test the Products to make it suitable for the ordinary purposes of its use—a snack marketed as an alternative to potato chips made with refined seed oils.

65. Defendant breached its implied warranties for the Products by concealing the presence of refined seed oils contained in the Product, and otherwise inadequately marketing the product as solely containing avocado oil.

66. In breach of Defendant's implied warranties, the Products are defective, unfit for the ordinary purposes for which it was intended to be used, and not merchantable.

67. Defendant is a "merchant" and a "seller" as those terms are defined under the Uniform Commercial Code (U.C.C.) and by the respective state statutes under which Plaintiffs alternatively pleads this claim, inter alia, Cal. Com. Code §§ 2103(1)(d) and 2104(1).

68. Plaintiffs and Class members are "buyers" of "goods" as defined under the U.C.C. and by the respective state statutes under which Plaintiffs alternatively pleads this claim, inter alia, Cal. Com. Code §§ 2103(1)(a) and 2105(1).

69. A warranty that the Products were in merchantable condition and fit for the ordinary purpose for which such products are used is implied by law under the U.C.C. and relevant state law.

70. Defendant knew or should have known of the specific use for which the Products would be purchased and used. Plaintiffs and the Class were promised a healthful alternative that omits refined seed oils, but also that it would be adequately labeled, pass without objection in the trade, and be fit for the ordinary purposes for which such health snacks are used.

71. Defendant knew that the Products would and did pass unchanged from the authorized manufacturers to Plaintiffs and members of the Class, with no indication of the refined seed oils in the Product.

72. Defendant provided Plaintiffs and Class members with an implied warranty that the Products were merchantable and fit for the ordinary purposes for which it was sold.

73. This implied warranty included, among other things, a warranty that Defendant manufactured, supplied, distributed, and/or sold the Products with consumers in mind who would be seeking products that omit refined seed oils for health and wellness reasons.

74. Contrary to the applicable implied warranties, the Products at the time of sale and thereafter were not fit for its ordinary and intended purpose, in that they, in fact, contained the very refined seed oils that Defendant represented to consumers were absent. Such action breached the implied warranty that the Products were of merchantable quality and fit for such use, in violation of the U.C.C. and relevant state law.

75. Defendant has been on notice of these issues and misrepresentations through, upon information and belief, its own internal research and development process. Defendant has had the opportunity to correct the ingredients and nutritional label of the Products and its misrepresentations but has chosen not to do so. When confronted with the allegations herein, Defendant elected to continue to sell its Product without disclosing its omissions.

76. As a direct and proximate result of Defendant’s breach of the implied warranty of merchantability and fitness for a particular purpose, Plaintiffs and Class members did not receive the benefit of their bargains.

77. Plaintiffs and Class members are entitled to damages and other legal and equitable relief, including the purchase price of the Products, overpayment, or loss of the benefit of the bargain.

**COUNT III**

**Common Law Fraud**

**(*On behalf of the Nationwide Class or, alternatively, on behalf of the California Subclass*)**

78. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

79. Plaintiffs bring this claim on behalf of themselves and on behalf of the Class.

80. Defendant committed fraud by (i) failing to disclose and (ii) actively concealing, at the point of sale of the Products to Plaintiffs and Class members and otherwise, that the Products contain refined seed oils. Through its own website, third-party websites, and other marketing materials, Defendant concealed the truth about the Product, intending for Plaintiffs and the Class to rely upon Defendant's representations—which they did.

81. A reasonable consumer would not have expected the Products to contain any amount of refined seed oils, in line with Defendant's marketing. Plaintiffs and the Class did not know of the facts which were concealed from them by Defendant. Moreover, as consumers, Plaintiffs and the Class did not, and could not, unravel the deception on their own. Defendant omitted information about the ingredients on its websites and marketing materials.

82. Defendant had a duty to disclose complete nutritional information because the true facts were known and/or accessible only to it and because it knew these facts were not known or reasonably discoverable by Plaintiffs or members of the Class.

83. As a direct and proximate result of Defendant's conduct, Plaintiffs and members of the Class have been harmed in that they purchased the Products when otherwise they would not have, paid more for the Products than they otherwise would have, and are left with Products of diminished value and utility because of the defect. Meanwhile, Defendant has sold more of the Products than it otherwise could have and charged inflated prices for the Product, thereby unjustly enriching itself.

84. Based on the foregoing, Plaintiffs are entitled to all remedies available, including refunds, actual damages, liquidated damages, punitive damages, attorney fees, and other reasonable costs. Plaintiffs and Class members request that the Court award equitable relief, including an order requiring Defendant to adequately disclose the complete nutritional and ingredient content of the Products and an order enjoining Defendant from selling the Products without disclosing this information in the future.

85. Defendant's acts and omissions were done wantonly, maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the rights of Plaintiffs and the Class; and to enrich itself. Its misconduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

## COUNT IV

### Unjust Enrichment

**(*On behalf of the Nationwide Class or, alternatively, on behalf of the California Subclass*)**

86. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

87. Plaintiffs bring this claim on behalf of themselves and on behalf of the Class.

88. This claim is asserted in the alternative to the extent that there is any determination that Plaintiffs do not have standing to assert any contractual claims asserted against Defendant on the alleged basis of an absence of contractual privity or otherwise. By its wrongful acts and omissions described herein, including selling the Products with ingredients other than as advertised, Defendant was unjustly enriched at the expense of Plaintiffs and the Class.

89. Plaintiffs and the Class conferred a benefit upon Defendant by purchasing the Products at the full price. Under the circumstances, it would be inequitable for Defendant to retain the profits, benefits, and other compensation obtained through its wrongful conduct in manufacturing, marketing, and selling the Products with the misrepresentation that the Products contain no refined seed oils, to Plaintiffs and Class members.

**COUNT V**

**Breach of California's False Advertising Law**

**Cal Bus. & Prof. Code §§ 17500, *et seq.***

**(*On behalf of the Nationwide Class or, alternatively, on behalf of the California Subclass*)**

90. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

91. Plaintiffs bring this claim on behalf of themselves and on behalf of the Class.

92. Beginning at an exact date unknown to Plaintiff, but within three (3) years preceding the filing of this Class Action Complaint, Defendant made untrue, false, deceptive and/or misleading statements in connection with the advertising and marketing of the Products.

93. Defendant made representations and statements (by omission or commission) that led reasonable consumers to believe that the Products were fit for their intended purpose, to consume a product represented as using avocado oil while avoiding refined seed oils. Defendant deceptively failed to inform Plaintiffs and Class members that the Products had such ingredients.

94. Plaintiffs and those similarly situated relied to their detriment on Defendant's false, misleading, and deceptive advertising and marketing practices. Had Plaintiffs and those similarly situated been adequately informed and not intentionally deceived by Defendant through Defendant's false representations and omissions, they would have acted differently by, without limitation, refraining from purchasing the Products or paying less for it.

95. Defendant's acts and omissions are likely to deceive the general public.

96. Defendant engaged in these false, misleading, and deceptive advertising and marketing practices to increase its profits. Accordingly, Defendant has engaged in false advertising, as defined and prohibited by §§ 17500, *et seq*., of the California Business and Professions Code.

97. The aforementioned practices also constitute unlawful competition and provide an unlawful advantage over Defendant's competitors, as well as injury to the general public.

98. As a direct and proximate result of such actions, Plaintiffs and the other members of the Class have suffered, and continue to suffer, injury in fact, and have lost money as a result of such false, deceptive, and misleading advertising in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. In particular, Plaintiffs and those similarly situated paid a premium for the Products, i.e., the difference between the price they paid for the Products and the price they would have paid but for Defendant's misrepresentations and omissions.

99. Plaintiffs seek, on behalf of themselves and those similarly situated, restitution of the difference between what Defendant acquired from Plaintiffs, the general public, and/or the Class, and what would have been acquired in absence of the false, misleading, and deceptive advertising and marketing practices complained of herein, which amount will be proven at trial, plus interest thereon.

100. Plaintiffs seek, on behalf of themselves and those similarly situated, a declaration that the aforementioned practices constitute false, misleading, and deceptive advertising.

101. Defendant, unless and until enjoined and restrained by this Court, will continue to cause injury in fact to the general public in the loss of money and property and Defendant will continue to violate federal and state law, including the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendant in which Defendant is not entitled. Plaintiffs and the members of the Class have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

## COUNT VI

**Breach of the California Consumer Legal Remedies Act ("CLRA")**

**Cal. Civ. Code §§ 1750-1785**

**(*On behalf of the California Subclass*)**

102. Plaintiff Brand incorporates by reference all preceding paragraphs as though fully set forth herein.

103. Plaintiff Brand brings this claim on behalf of himself and on behalf of the California Subclass.

104. Defendant is a "person" within the meaning of Cal. Civ. Code § 1761(c).

105. Plaintiff Brand and the members of the California Subclass are "consumers" as defined by Cal. Civ. Code § 1761(d).

106. The Products are a "good" as defined under Cal. Civ. Code § 1761(a).

107. The CLRA proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a).

108. Defendant engaged in unfair and/or deceptive acts in violation of the CLRA principally because it intentionally or negligently concealed and suppressed material facts concerning the actual ingredients of the Products. Defendant accomplished this by explicitly representing that there were no refined seed oils in the Products and by failing to disclose accurate ingredients in marketing and product labeling. Defendant's conduct violated the CLRA, including but not limited to, the following provisions:

(1) Defendant represented and continues to represent that the Products have characteristics, uses, or benefits that it does not have, in violation of § 1770(a)(5);

(2) Defendant represented and continues to represent that the Products are of a particular standard, quality, or grade when, in fact, it is not, in violation of § 1770(a)(7);

(3) Defendant advertised and continues to advertise its Product with the intent not to sell them as advertised, in violation of § 1770(a)(9); and

(4) Defendant represented and continues to represent that its Product has been supplied in accordance with a previous representation when it has not, in violation of § 1770(a)(16).

109. Defendant's unfair and/or deceptive acts or practices repeatedly occurred in its trade or business and were capable of deceiving a substantial portion of the purchasing public.

110. Defendant knew, should have known, or was reckless in not knowing that the Products contained ingredients other than Defendant claimed it did and, therefore, that the Products are not suitable for its intended use.

111. Defendant was under a duty to Plaintiff Brand and the California Subclass to disclose the ingredients and contents of the Products because:

112. The facts that Defendant misrepresented to, and concealed from, Plaintiff Brand and the California Subclass are material because a reasonable consumer would have considered (and in fact did consider) them to be important in deciding whether to purchase the Products or pay a lesser price for it; and

113. The nutritional content of the Products poses a serious health consideration for consumers and affects the central utility of the Products for their intended use.

114. In failing to disclose the nutritional content and ingredients of the Products, Defendant knowingly and intentionally concealed material facts in violation of its duty to disclose.

115. Plaintiff Brand and the California Subclass members have suffered injury in fact and actual damages resulting from Defendant's material misrepresentations and omissions, including purchasing a Product they otherwise would not have purchased, paying more for the Products than they otherwise would have paid, and being left with Products of diminished value and utility because of the ingredients it actually contains.

116. As a direct and proximate result of Defendant's unfair and deceptive conduct, Plaintiff Brand and California Subclass members have been harmed and presently seek declaratory and injunctive relief. If Defendant does not provide the requested class-wide cure within the statutory period, Plaintiff Brand will seek leave to amend to request statutory damages under the CLRA.

**<u>COUNT VII</u>**

**Breach of the California Unfair Competition Law ("UCL")**

**Cal. Bus. & Prof. Code §§ 17200-17210**

**(*On behalf of the California Subclass*)**

117. Plaintiff Brand incorporates by reference all preceding paragraphs as though fully set forth herein.

118. Plaintiff Brand brings this claim on behalf of himself and on behalf of the California Subclass.

119. The UCL proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. Defendant's conduct violates each of these prohibitions.

**Unlawful Conduct**

120. Defendant's conduct is unlawful because, as set forth herein, it violates the CLRA, among other laws.

121. Defendant is aware of the actual ingredients of the Products, which renders it unfit for its intended purpose. Despite this knowledge, Defendant sold the Products to Plaintiffs and the Class members as a healthy alternative without refined seed oils; refused to notify Plaintiffs and the Class members of the misrepresentation and omissions regarding the Products' actual ingredients; and refused to remediate the Products or their labeling to accurately represent and reflect the true ingredients contained therein.

**Unfair Conduct**

122. Defendant's conduct is unfair because it violated California's public policy, including that which is legislatively declared in the CLRA, requiring a manufacturer to ensure that goods it places on the market are of a particular standard, quality, or grade. Defendant has failed to do this by placing the Products on the market with ingredients other than advertised.

123. Defendant acted in an immoral, unethical, oppressive, and unscrupulous manner in at least the following respects:

(1) Selling Plaintiffs and the Class a Product with ingredients other than it claimed;

(2) Failing to disclose the true ingredients of the Products, despite the opportunity to do so in numerous locations that people in the market for such products would be likely to encounter;

(3) Failing to exercise adequate quality control and due diligence over the Products before placing it on the market; and

(4) Failing to acknowledge the scope and severity of the misrepresentation of actual ingredients in the Products, which poses serious concerns for consumers in the market for products conducive to avoiding refined seed oils.

124. The gravity of the harm resulting from Defendant's unfair conduct outweighs any potential utility of the conduct. The practice of selling the misrepresented Product without providing adequate supplementary warnings about accurate nutritional content contained therein harms the public at large and is part of a common and uniform course of wrongful conduct.

125. There are reasonably available alternatives that would further Defendant's business interests in increasing sales and preventing false warranty claims. For example, Defendant could have: (a) acknowledged the ingredients through accurate labeling, and/or (b) adjusted manufacturing and sourcing to meet the standards they claim to meet.

126. The harm resulting to Plaintiffs and Class members from Defendant's unfair conduct was not reasonably avoidable. Directly contrary to Defendant's misrepresentations and omissions, the Products does not contain exclusively avocado oil and Defendant has failed to disclose this material fact to consumers, of which fact Defendant had exclusive knowledge through its own product development and testing. Plaintiffs and the Class did not know of and had no reasonable means of discovering the Product's true ingredients.

**Fraudulent Conduct**

127. Defendant's conduct is fraudulent in violation of the UCL. Defendant's fraudulent acts include knowingly and intentionally concealing from Plaintiffs and the Class the true ingredients of

the Products and falsely marketing and misrepresenting the Products as being devoid of refined seed oils.

128. Defendant's misrepresentations and omissions alleged herein caused Plaintiffs and the Class to purchase the Products, or pay more than they would have had Defendant disclosed accurate nutritional information.

129. At all relevant times, Defendant had a duty to disclose the Products' actual ingredients because it had superior and exclusive knowledge thereof, which affects the central utility of the Products for their intended use, and because Defendant made representations about the quality and purpose of the Products while failing to disclose their nutritional content.

130. Accordingly, Plaintiffs and the Class have suffered injuries in fact, including loss of money used to purchase the Products, as a result of Defendant's unlawful, unfair, and fraudulent acts. Absent these acts, Plaintiffs and the Class would not have purchased the Products at all, or at least not at the prices they paid.

131. Plaintiffs and the Class seek appropriate relief under the UCL, including such orders as may be necessary to: (a) enjoin Defendant from continuing its unlawful, unfair, and fraudulent acts or practices, and (b) restore Plaintiffs and the Class any money Defendant acquired by its unfair competition, including restitution. Plaintiffs also seek reasonable attorneys' fees and expenses under applicable law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

a) Certify this case as a class action under Fed. R. Civ. P. 23(b)(2), (b)(3), and/or (c)(4), appoint the named Plaintiffs to be the Class representative and the undersigned counsel to be Class counsel;

b) Award Plaintiffs and Class members all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiffs and Class members are entitled;

c) Award pre-judgment and post-judgment interest on such monetary relief;

d) Grant an order or orders requiring Defendant to adequately disclose the ingredients in the Products and enjoining Defendant from misrepresenting that the Products contain no refined seed oils;

e) Award reasonable attorneys' fees and costs as permitted by law; and

f) Grant such further relief that this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs, on behalf of themselves and the Class, hereby respectfully demand a trial by jury of all issues triable by right.

Dated: October 9, 2026

Respectfully submitted,
*/s/ Robert A. Mackey*

Robert Mackey, Esq. (SBN 125961)
bobmackeyesq@aol.com
**LAW OFFICES OF ROBERT MACKEY**
16320 Murphy Road
Sonora, CA 95370
Tel: (412) 370-9110

**MIGLIACCIO & RATHOD, LLP**
Jane Manwarring, Esq.*
412 H Street N.E., Suite 302
Washington, D.C. 20002
Tel: (202) 470-3520
jmanwarring@classlawdc.com
* *pro hac vice anticipated*

Attorneys for Plaintiffs & the Putative Class